**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| JESSIE L. MERCER, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:07CV00059 ERW |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Jessie L. Mercer's ("Petitioner") Motion to Vacate, Set Aside or Correct Sentence [doc. #1] pursuant to Title 28 U.S.C. §2255.

### I. BACKGROUND FACTS

Petitioner was indicted in Count One of a two-count indictment on February 24, 2005. The indictment, in relevant parts, charged that "[o]n or about May 31, 2005, . . . [Petitioner] did possess in affecting foreign and interstate commerce, firearms, . . . and had previously been convicted of the following crime, punishable by a term of imprisonment exceeding one year: . . . [i]n, violation of Title 18, United States Code, Section 922(g)(1)." In a timely fashion, an Assistant United States Attorney representing the Government, Petitioner and his counsel executed a document titled, "PLEA AGREEMENT, GUIDELINES RECOMMENDATIONS AND STIPULATIONS" on January 17, 2006.

The plea agreement was unusual in that it provided that "[t]he parties do not have any agreement as to the application of the United States Sentencing Guidelines in this case or to the sentence to be imposed by this Court," and "[n]either party has waived its right to appeal any issue in this case, or to file post-conviction proceedings." Customarily, the plea agreements submitted for

approval by this Court contain specific language when there is an expectation that a defendant may be categorized as Career Offender, Armed Career Criminal or some other classification that might enhance punishment. Here, there is no written recognition that Petitioner might be subjected to any such possible enhancements. Paragraph 6, on page 7, provides:

> PENALTIES:
> A. Statutory Penalties: The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than ten(10) years, a fine of not more than $250,000.00, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than (3) years.
> B. The defendant understands that except for Title 18, Sections 3553(b)(1) and Section 3742(e), this offense is affected by the provisions and Guidelines of the "Sentencing Reform Act of 1984," Title 18, United States Code, Section 3661 *et. seq.*[1] and Title 28, United States Code, Section 994.[2]

At the Change of Plea Hearing, the Court learned that Petitioner received a general equivalency diploma after attending school to the eleventh grade, and he had one year of technical school. (Plea Tr. P.5 L.8-10). He had been treated for addiction to narcotic drugs or controlled substances. (Plea Tr. P.5 L.14-18). He said he was satisfied with the legal services of his attorney. (Plea Tr. P.8 L.2-9). The Assistant United States Attorney confirmed that there was no agreement as to the application of the United States Sentencing Guidelines and neither party waived any right to appeal "any issue in this case or in any post[-]conviction proceeding . . ." (Plea Tr. P.14 L.2-9). After the Court invited the Assistant United States Attorney to state the range of punishment into the record, he recited, "[y]our honor, the range of punishment is a term of imprisonment not to exceed

---

[1]This statute provides, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

[2]This statute pertains to duties and responsibilities of the United States Sentencing Commission.

10 years, and/or a fine of not more than three years, and a $100 special assessment." Petitioner acknowledged that he understood the range of punishment. (Plea Tr. P.16 L.3-11). Petitioner acknowledged that he had discussed the possible application of the sentencing guidelines with his attorney and was then asked by the Court, "[d]o you understand that the sentence imposed may actually be different from any estimate that you may have expected or that he [counsel] may have given to you regarding those Guidelines?" Petitioner answered, "[y]es, sir." (Plea Tr. P.17 L.17-P.18 L.1).

Petitioner was sentenced on April 28, 2006. At the Sentencing Hearing, the Court acknowledged that the United States Sentencing Guidelines were advisory and not mandatory and made calculations according to the 2005 Edition of the United States Sentencing Guidelines Manual.

> THE COURT: The Court adopts as true the factual statements contained in the Presentence Report as the Court's findings of fact, and I shall now proceed to make calculations under the United States Sentencing Guidelines.
>
> First, let me say that the United States Sentencing Guidelines since January 12th, 2005, are advisory and they're no longer mandatory. The Court is still instructed to make calculations under the Guidelines, to consider the guideline range along with other factors.
>
> I'll consider the impact of the parties' plea agreement in this case. I will decide whether traditional departure is appropriate under the Guidelines. Then I'll consider whether a nontraditional guideline sentence should be imposed after considering all of the factors in 18, United States Code, §3553(a).
>
> Those factors are as follows: The Court shall consider the nature and circumstances of the offense and the history and characteristics of the Defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the Defendant; and to provide the Defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.
>
> I'll also consider the statement of Mr. Mercer and of counsel along with any evidence or other material presented to me on any sentencing issue.

3

> I'll now proceed to make calculations under the United States Sentencing Guidelines. The 2005 Edition of the guideline manual was used in this case.
>
> The guideline for violation of 18, United States Code, 292(g)(1) is found in 2K2.1(a) of the manual. The Defendant committed the instant offense subsequent to sustaining two prior felony convictions of crimes of violence. The Base Offense Level under 2K2 -- 2K2.1(a)(2) is 24. Two levels are added because the offense involved seven firearms under 2K2.1(b)(1)(A). Two levels are added because two of the firearms were stolen under 2K2.1(b)(4). Because the firearms were possessed in [connection] with the felony offense of burglary, four levels are added under 2K2.1(b)(5). Two levels are reduced for the Defendant's full and timely acceptance of responsibility under 3E1.1(a), and the Total Offense Level is 29.
>
> Because the Defendant has three prior violent felony convictions as detailed in Paragraphs 33, 36 and 43, he is subject to an enhanced sentence under the provision of 18 United States Code, 924(c) -- 924(e)(1);[3] 924(e)(1). And since the firearms were possessed in connection with the burglary of a residence, the Offense Level becomes 31 under 4B1.4(b)(3)(B) and 3E1.1(a) and (b).

(Sent Tr. P.2 L.18-P.4 L.18). His counsel asked for a "downward departure" of eight months. The Court asked for a guideline reference to support Counsel's request, but none was given. Petitioner likewise asked for a "downward departure" of eight months. (Sent Tr. P.7 L. 19-P8 L.2).

The Court concluded, "I absolutely believe that what - - what 180 months will do, 188 months won't do any more." At that time, when sentencing options were available, the Court erred by stating, "[h]owever, there has to be some basis for making that grant of your request, and I don't know of any - - any basis. I mean I understand that the Guidelines are advisory and not mandatory." (Sent. Tr. P.8 L.11-20). The Court made 18 U.S.C. §3553(a) findings, which under the law at that

---

[3]"In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)." 18 U.S.C. §924(e)(1)

4

time would have served as a justification to impose a 180-month sentence, rather than a 188-month sentence, but the Court erroneously concluded there was no lawful basis to make what would have been a justifiable downward variance as a non-guideline sentence to arrive at a reasonable sentence, which the Court obviously preferred to do. The Court concluded:

> THE COURT: -- going back to when your parents were divorced, back to your very serious drug addictions; abusing drugs. You injected cocaine regularly; methamphetamine, two grams a month till arrest; marijuana at 13; used more on low-paying jobs where there was no drug testing than for more high-paying jobs with drug testing. You used LSD and Ecstasy. And there is -- there is some slight bit of employment. You were a welder at 10.25 an hour; detailing tractors and combines. I didn't -- In order to -- What I'm saying is I would be doing a meaningless act if I depart downward without reasons. It's going to be reinstated, and there's no reason for me to do it. There has to be some basis which allows me to depart downward and I just don't find it. I'm not being mean spirited about it. I just don't find a basis.
> 
> * * *
> 
> The Court has considered all of the factors. The overriding factors in view of the Criminal History Category is to reflect the seriousness of the offense; to promote respect for the law and to regard just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the Defendant. The Court also notes and a very important issue is the opportunity to provide the Defendant with serious drug treatment, and that will be provided.

(Sent Tr. P.10 L. 1-15 and P.11 L. 15-23)

Petitioner stated the following:

> THE DEFENDANT:[4] Yes, sir. I mean I -- I pled to the under the understanding I was going to get the 110, but I wasn't aware of the fact that -- of the enhancements. And I might have went a different route with, you know, say, for instance, like had other hearings but, yet, I waived them because I, you know -- I did do the crime and I was wanting to go ahead with everything. What I'm saying is the crimes that I committed in the past, I've already served time for, sir. And I never hurt anyone, and they're not actually even violent crimes; yet -- but for the enhancements by the federal statutes.

---

[4]It is difficult from the record to determine the meaning of Petitioner's reference to "110." The Court has reviewed the Pre-Sentence Report, and disregarding the armed career criminal enhancement, there appears no combination of United States Sentencing Guideline values, that would equal 110 months. At the hearing, which the Court will order, an explanation of "110" will be sought.

And as you see, one of them was when I was 17 years old, and I only did 60 days in jail for it. It was auto theft. And those are basically the only things. I mean I understand you maybe have a problem with that, but I have no choice but to ask for it because --

THE COURT: I understand.

(Sent Tr. P.8 L.25-P.9 L.16)

Petitioner was sentenced to a term of 188-months imprisonment and was placed on Supervised Release for a term of three years. The Court intends to correct its error, concluding it could not under the law grant a sentence of 180 months, rather than 188 months, *sua sponte*, when the final appealable order is made in this proceeding.

## II. STANDARDS FOR RELIEF UNDER 28 U.S.C. §2255

Pursuant to 28 U.S.C. §2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. For §2255 petitions, "the question in each case must be . . . whether the kind of violation alleged demonstrates either 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Poor Thunder v. United States*, 810 F.2d 817, 822 (8th Cir. 1987) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The Court must hold an evidentiary hearing to consider claims in a §2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994), quoted in *Furnish v. United States*, 215 F.Supp.2d 1020, 1023 (E.D. Mo. 2000); 28 U.S.C. §2255. Thus, a petitioner is entitled to an

evidentiary hearing "'when the facts alleged, if true, would entitle [the petitioner] to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "'without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).

A §2255 petition may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. A showing of ineffective assistance of counsel requires a petitioner to demonstrate that "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prove ineffective assistance under the first prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

The recent Eighth Circuit case of *Marcrum v. Luebbers*, No. 05-3930 (Dec. 7, 2007), is very instructive in resolving the issue of "deficiency of performance" in the *Strickland* context:

> The test we apply for deficiency of performance is an objective standard of reasonableness. Id. at 688. In *Strickland*, when the Supreme court pronounced this standard, it expressly declined to dictate detailed rules for deciding reasonableness: "More specific guidelines are not appropriate." Id. However, *Strickland* gave us several guides to decision: we must assess reasonableness on all the facts of the particular case, we must view the facts as they existed at the time of counsel's conduct, and we must evaluate counsel's performance with a view to whether counsel functioned to assure adversarial testing of the state's case. Id. at 690. Moreover, the reasonableness of counsel's actions may depend on his client's wishes and statements. Id. at 691; see *Schriro v. Landrigan*, 127 S.Ct. 1933, 1941 (2007) (client's statement to court that he did not wish to present mitigating evidence supported state court finding of no prejudice from counsel's failure to investigate such evidence). A court considering a defendant's attack on his conviction must be "highly differential" in assessing whether counsel's course of conduct could be considered a sound trial

> strategy rather than an error, *Strickland* 466 U.S. at 689, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. In other words, the burden of proof is on the petitioner to show that "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 384.
>
> \* \* \*
>
> If viewed with appropriate deference, counsel's performance was in fact deficient, the convicted defendant will only be entitled to relief if he shows there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in outcome." Id. The reviewing court must not consider the attorney error in isolation, but instead must assess how the error fits into the big picture of what happened at trial. Id. at 696. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id.

*Marcrum v. Luebbers*, No. 05-3930 (8th Cir. 2007) slip op. at pp. 21-23.

Even if sufficient proof exists of deficient performance, relief may only be obtained if a petitioner also proves that counsel's deficient performance prejudiced the case. Id. at 694. The Court may address the two prongs of the *Strickland* test in any order, and if a petitioner fails to make a sufficient showing on one prong, the Court need not address the other. Id. at 697; *Matthews v. United States*, 114 F.3d 112, 113-14 (8th Cir. 1997).

## III. ANALYSIS

### A. Ground One - Ineffective Assistance of Counsel

"Counsel was ineffective, in that he did not explain to Petitioner the full consequences of his plea of guilty, telling him he would receive a sentence of 10-years. Counsel was ineffective for not challenging the Constitutionality of §924 and the ACC statute. Counsel was ineffective in failing to challenge the application of the Armed Career Criminal provisions to me."

The Court will separate the multiple sub-parts of Ground One and separately address each. To the extent Petitioner complains of ineffective assistance of trial counsel for failure to challenge the constitutionality of 18 U.S.C. §924(e)(1) and the Armed Career Criminal "ACC" statute, that part

8

of Ground One will be dismissed, for failure of Petitioner to prove his trial counsel deficiently performed or that Petitioner was prejudiced, under the standards set forth above. The Constitutionality of §924(e)(1) has consistently been upheld, and counsel is not expected to perform meaningless acts. However, the question of fact which this Court cannot resolve on the record, is whether trial counsel's performance was deficient for alleged failure "to explain to Petitioner the full consequences of his plea of guilty, telling him he would receive a sentence of 10-years," or "in failing to challenge the application of the Armed Career Criminal provisions to me."[5]

The Assistant United States Attorney embraces the argument that Petitioner was obviously fully informed at the time of receipt of the Pre-Sentence Report, and he is correct in making that acknowledgment. However, the inquiry as to the knowledge of Petitioner must be leveled at the time Petitioner entered his plea of guilty. Generally, when a plea of guilty is made, a defendant may not thereafter make independent claims relating to deprivation of constitutional rights that occurred prior to entry of a guilty plea, however, the exception to this rule is that a defendant may challenge entry of a guilty plea on the basis it was not entered voluntarily and intelligently.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

---

[5]The Court concludes that trial counsel had no duty "to challenge the application of the Armed Career Criminal provisions to [Petitioner]," but is construing this claim for relief as an argument that trial counsel failed to inform Petitioner of the possible consequences of application of §924(e)(1) so he could make a "knowing" decision as to whether he should enter a guilty plea.

*Hanson v. Passer*, 13 F.3d 275, 281(C.A.8 Minn.1994).

*McMann* held that a waiver of right to contest the admissibility of evidence the state might have offered against the defendant must be intelligently done with sufficient awareness of the relevant circumstances and likely consequences (citing *Brady v. United States,* 397 U.S. 742 (1970)). Some helpful language followed in *Tollett v. Henderson*:

> The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' McMann v. Richardson, supra, 397 U.S. at 771, 90 S.Ct. at 1449. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.
>
> We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

*Tollett*, 411 U.S. 258, 266-267, 93 S.Ct. 1602, 1608 (U.S.Tenn. 1973).

A factual issue on Ground One remains to be resolved. Petitioner entered an "'open' plea, without any agreement with the Government as to any issue regarding sentence." (Plea Agreement P.4). Petitioner agreed that "[t]he determination of the defendant's Criminal History Category shall be left to the Court after it reviews the Pre[-]sentence Report. The Criminal

History Category determination will be made only after the United States Probation Office obtains and evaluates the records it can find of the defendant's criminal history. Prior convictions can affect the sentence and usually result in a harsher sentence. Both parties retain their right to challenge, before sentencing, the finding of the Pre[-]sentence Report as to the defendant's criminal history and the applicable category.

<u>Both parties are aware that the results of a preliminary criminal record check are available for review in the Pretrial Services Report</u> (emphasis supplied) (Plea Agreement PP.4,5).

The Pretrial Services Report, available before Petitioner entered his plea of guilty, reveals that Petitioner plead guilty in Houston, Texas to Count One, Burglary on March 9, 1995, and was placed on ten years probation; on Count Two in Houston, Texas, Petitioner plead guilty on June 21, 1996, and was placed on probation for two years. Both of these offenses are crimes of violence, under the United States Sentencing Guidelines. At the time this report was prepared, a third crime of violence had not been identified by the Pretrial Services Office.

The Pretrial Services Report, at the time the plea of guilty was entered, showed that Petitioner had only two crimes of violence. The third crime of violence, car theft, was not stated in the Pretrial Services Report. It may be that trial counsel, based on this report, advised Petitioner that with only two prior crimes of violence, he would not be subject to §924(e)(1); it may be that Petitioner was advised that the Probation report might reveal other crimes of violence that would implicate §924(e)(1), or the impact of §924(e)(1) may never have been discussed at all. Trial counsel filed a document with the Court stating there were no objections to the Pre-sentence Report. While Petitioner is held accountable to know the offenses he has committed,

11

whether he was advised of the consequences of accumulating three crimes of violence, and, if he was not advised by trial counsel, whether that is deficient performance, and if so, whether Petitioner was prejudiced, are questions better resolved after a hearing probing these issues.

> **B.     Ground Two - Counsel was ineffective for not contesting the unconstitutionality of §924(g)(1) & (j)**[6]
> "The application of the Provisions of 18 U.S.C. §922(g)(1) & (j) to Petitioner is unconstitutional because Petitioner did not possess the firearms in or affecting interstate commerce, as a consequence his possession was not within the reach of the Federal statute which requires the possession to be in or affecting interstate commerce. The possession of a firearm which had once traveled to interstate commerce is insufficient on which to premise federal jurisdiction because the nexus with interstate commerce had been far to attenuated.

Relief under Ground Two is denied. 18 U.S.C. §922(g)(1) provides, in relevant part, "[i]t shall be unlawful for any person - to . . . possess in or affecting commerce, any firearm . . . which has been shipped or transported in interstate . . . commerce." In *United States v. Dobbs,* 449 F.3d 904, 909 (8th Cir.2006), Dobbs argued that his use of a firearm or the requisite nexus to interstate commerce was insufficient to find him guilty beyond a reasonable doubt. An expert testified that only rare, collectable guns are manufactured in Iowa, sufficing to prove that if the object was a firearm, it was a firearm that had traveled in interstate commerce. *Id.* at 911. Likewise, where *Bates* contended that Congress lacks the power under the Commerce Clause to criminalize the mere possession of a firearm that has traveled in interstate commerce absent a showing of a more substantial impact on interstate commerce, the Eighth Circuit rejected his argument holding "an individual case under section 922(g)(1) may fall under either the second or third categories identified in *Lopez*. . . And unlike the Gun-Free School Zones Act, section 922(g) contains the same type of 'express jurisdictional element which might limit its reach to a discrete set of firearm

---

[6] 18 U.S.C. §922(j) has no relevance to this proceeding.

possessions that additionally have an explicit connection with or effect on interstate commerce' approved in *Bass*." (citation omitted). *See United States v. Bates,* 77 F.3d 1101, 1103-04 (8th Cir. 1996).

During the Change of Plea Hearing, the Assistant United States Attorney stated, in the record, elements of the offense to which Petitioner entered a plea of guilty. The Assistant United States Attorney stated, "[t]he firearms were all manufactured at locations other than the State of Missouri and affected interstate commerce prior to their delivery in the Eastern District of Missouri." Petitioner was asked if he had any disagreement with any of the facts recited by the Assistant United States Attorney. Petitioner said. "[n]o sir, not at all." (Plea Tr. P.12 L.3-10). Relief requested under this ground will be denied.

    **C.    Ground Three - Petitioner's plea was not knowingly and intelligently entered.**
"Counsel did not advise Petitioner of the full consequence of his plea of guilty, in fact counsel told Petitioner he was looking at a maximum of 10 years."

The Court has addressed this ground, in part, in the analysis under Ground One. The Court will decide whether Petitioner states a lawful claim for relief under this ground after the evidentiary hearing.

    **D.    Ground Four - Counsel was ineffective for not filing a Notice of Appeal.**[7]
"Counsel should have filed a notine (sic) of Appeal in Petitioner's behalf and

---

[7]There is some confusion in the briefing that requires acknowledgment. The Court will track Petitioner's brief on each of the six grounds listed. In Ground Four, Petitioner addresses advice of counsel on the issue of a maximum ten-year sentence; Respondent addresses the issue of nexus of possession of a firearm to interstate commerce. In Ground Five, Petitioner raises the issue that he was not engaged in a violent act in possession a firearm; Respondent argues the issue of effect of Petitioner's counsel on advising him of his right to appeal. In Ground Six, Petitioner argues the indictment did not charge applicability of §924(e)(1); Respondent argues that Petitioner's non-involvement in a violent act is irrelevant. Respondent adds a seventh Ground that covers issues raised in other grounds; Petitioner has no Ground Seven.

13

should have made a record in the district court pretaining (sic) to the issues in this motion. Counsel was directed to file a Notice of Appeal in my behalf, but failed to do so, thereby depriving me of my statutory right of appeal."

A factual dispute exists pertaining to this ground which can only be resolved by an evidentiary hearing. The Court will determine if Petitioner is entitled to relief under this ground after the evidentiary hearing is conducted.

    **E.    Ground Five - Movant received ineffective assistance of counsel when counsel failed to object to the sentencing of Movant as an armed career criminal because the defendant, in possessing the firearms, was not engaged in a violent act.**
"The Movant, upon the advice of counsel, tendered a plea of guilty to the charge of being a felon in possession of firearms, an act which is in itself not a violent act. Yet because of his prior convictions, he was sentenced as an 'armed career criminal,' when he did not have the requisite number of prior convictions to qualify for sentencing as an 'armed career criminal.'"

Relief requested under this ground will be denied. While the Court has not determined whether Petitioner is or will be entitled to relief under Ground One, a somewhat related ground, and will not do so until after an evidentiary hearing, whether being a felon in possession of a firearm is a violent felony is irrelevant to any issue in this case. Clearly, under the current state of the law which may change because of a pending case in the United States Supreme Court, Petitioner has committed three prior violent felonies. If he knowingly and intelligently entered the plea of guilty, and if he is not entitled to any other relief in his Petition, the three violent felonies which he committed will require Petitioner to serve a term of imprisonment of fifteen years. Relief under this ground will be denied.

    **F.    Ground Six - Movant was denied due process of law under the Fifth Amendment to the Constitution when he tendered a plea of guilty to the charge of being a felon in possession of firearms, but was sentenced as an "armed career criminal," when he was not indicted of the crime of being an "armed career criminal."**
"Defendant was charged by the Grand Jury as a convicted felon who possessed

14

> certain firearms. He was not charged by the grand jury indictment as an armed career criminal. The indictment charged the defendant with possession of various rifles and shotguns in violation of 18 U.S.C. §922(g) (Count I) and with possession of firearms which he knew to have been stolen in violation of 18 U.S.C. §922(j). Movant entered a plea of guilty to the offense of possession of a firearm by a convicted felon, yet he was sentenced as an armed career criminal, under 18 U.S.C. §924(e), which mandates a mandatory 15 year minimum sentence. The crime to which the Movant entered a plea of guilty carried no mandatory minimum penalty and had as a maximum sentence 10 years. 18 U.S.C. §924(a)(2). Yet, in spite of the fact that Movant was not charged with being an 'armed career criminal' by the Grand Jury, he was sentenced as though he had been charged with the crime and that he had been convicted of the crime, when neither is the case. In the process not only was the Movant's right to a grand jury indictment under the Fifth Amendment violated, but his Sixth Amendment right to notice of the charges was violated as well."

Petitioner is not lawfully entitled to relief under this ground. This ground is resolved by *Bates*:

> Bates claims that he was denied due process at the sentencing phase because he received no formal notice in the indictment or judgment that he would be sentenced under 18 U.S.C. § 924(e)(2), which mandates a minimum fifteen-year sentence for a defendant convicted under section 922(g) who has three prior convictions for a violent felony or serious drug offense. Because both the indictment and the judgment referred to section 924(a)(2), which provides a maximum sentence of ten years imprisonment, rather than section 924(e)(1), Bates claims that he can constitutionally be sentenced to no more than the ten years provided in section 924(a)(2). We review this constitutional claim de novo. *Johnson,* 56 F.3d at 953.
>
> References in the indictment to sentence enhancements such as section 924(e) are "mere surplusage" and "may be disregarded if the remaining allegations are sufficient to charge a crime." *United States v. Washington,* 992 F.2d 785, 787 (8th Cir.) (quotation omitted), *cert. denied,* 510 U.S. 936, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993). Although surplusage, such language in the indictment "serves a valid and useful purpose in that it gives notice to the defendant from the start that the government intends to seek the enhanced sentence if the defendant is convicted." *Id.* Assuming due process requires notice to the defendant that the government intends to enhance his sentence under a specific statutory provision, we believe that Bates received adequate notice nonetheless. Two of the three convictions relied upon to enhance his sentence were proven at trial. The other was fully set out in the presentence investigation report, leaving Bates with "ample opportunity to investigate his earlier convictions and to challenge the requirements of §

15

924(e)(1)." *United States v. Adail,* 30 F.3d 1046, 1047 (8th Cir.) (per curiam), *cert. denied,* 513 U.S. 1051, 115 S.Ct. 653, 130 L.Ed.2d 557 (1994). The absence of any prior notice could not have affected the fairness of Bates's sentencing. Because sentencing is a separate phase of the criminal process, notice of which offenses the Government would be able to rely on in order to enhance Bates's sentence became relevant only at the sentencing stage. *United States v. McMurray,* 20 F.3d 831, 833-34 (8th Cir.1994).

*Bates*, at 1105 -1106.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Jessie L. Mercer's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is **GRANTED in part and DENIED in part**. The Court will hold an Evidentiary Hearing on **April 11, 2008**, at **1:30 p.m.**, in **St. Louis, Missouri**, to address the issue of Ineffective Assistance of Counsel raised in Counts One, Three, and Four. The remaining claims of the Petition will be dismissed in the Court's final appealable order. No new grounds will be considered by the Court at the Evidentiary Hearing. A separate Order of Appointment of Counsel including a transport order for the attendance of Petitioner at this Hearing shall issue forthwith.

**IT IS FURTHER ORDERED** that the Court expects to *sua sponte* reduce Petitioner's sentence from 188 months to 180 months in the Court's final appealable order.

**IT IS FURTHER ORDERED** that this is not a final and appealable order.

So Ordered this 28th Day of February, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE